UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

NIKET JAIN,

Defendant.

Docket No.:  19-cr-059 (PKC)


**MOTION OF THE DEFENDANT NIKET JAIN: A) TO DISMISS COUNTS ONE, TWO AND THREE OF THE INDICTMENT FOR DUPLICITY; B) TO DISMISS COUNTS ONE AND THREE AS BARRED BY THE STATUTE OF LIMITATIONS; AND C) FOR THE PRODUCTION OF BRADY AND GIGLIO MATERIAL**


**EMMET, MARVIN & MARTIN, LLP**
120 Broadway
New York, New York 10271
(212) 238-3000
*Attorneys for Defendant Niket Jain*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ......................................................................................4

    The Indictment .............................................................................................5

ARGUMENT .......................................................................................................7

    A.    Counts One, Two and Three Should be Dismissed for Duplicity.....................7

    B.    Counts One and Three Should be Dismissed as Barred by the Statute of Limitations ...........................................................................................9

    C.    The Government Should be Required to Immediately Produce Brady and Giglio Material ...................................................................................11

CONCLUSION..................................................................................................13

## TABLE OF AUTHORITIES

CASES

*Brady v. Maryland,*
    373 U.S. 83 (1963)................................................................................11

*Giglio v. United States,*
    405 U.S. 150 (1972); ...........................................................................11

*United States v. Abakporo,*
    959 F. Supp. 2d 382 (S.D.N.Y. 2013)...............................................7, 8

*United States v. Aracri,*
    968 F.2d 1512 (2d Cir. 1992)...............................................................7

*United States v. Avellino,*
    129 F. Supp. 2d 214 (E.D.N.Y. 2001) ...............................................11

*United States v. Bergstein,*
    2017 WL 1750392 *2 (S.D.N.Y. May 3, 2017)(Castel, J.) ..................7

*United States v. Bergstein,*
    2018 WL 2417845 (S.D.N.Y. May 29, 2018)(Castel, J.) .....................9

*United States v. Cusimano,*
    123 F.3d 83 (2d Cir. 1997)...................................................................7

*United States v. Gabriel,*
    920 F. Supp. 498 (S.D.N.Y. 1996) ......................................................8

*United States v. Madori,*
    419 F.3d 159 (2d Cir. 2005)...............................................................11

*United States v. Maples,*
    459 F.3d 154 (2d Cir. 2006)...............................................................10

*United States v. Mennuti,*
    679 F.2d 1032 (2d Cir. 1982)...............................................................9

*United States v. Saporta,*
    270 F. Supp. 183 (E.D.N.Y. 1967) ......................................................7

*United States v. Tutino,*
    883 F.2d 1125 (2d Cir. 1989)...............................................................7

## PRELIMINARY STATEMENT

This Motion is respectfully submitted on behalf of Defendant Niket Jain (the "Defendant" or "Jain") to: a) dismiss Counts One, Two and Three of the Indictment as duplicitous; b) dismiss Counts One and Three as barred by the five-year statute of limitations; and c) to require the government to produce *Brady* and *Giglio* material immediately, with the trial in this matter scheduled for March 30, 2020.

Count One of the Indictment alleges a conspiracy between "Individual-1," who is Joseph Krigsfeld ("Krigsfeld") and Jain to commit securities fraud and wire fraud as against "Investor-1" and "Investor-2." Count Two alleges substantive securities fraud, alleging the same scheme to defraud Investors 1 and 2 of money and property as charged in Count One. Finally, Count Three alleges wire fraud on the same theory, that a single scheme to defraud was perpetrated against the same individuals. These crimes are alleged to have been committed using several investment funds referred to together in discovery documents as "Aberon."

The individuals purportedly defrauded in this scheme are Krigsfeld's mother, Victoria Neil Krain[1] ("Krain"), who, to our understanding, is identified as Investor-1 in the Indictment, although discovery produced by the government indicates that Krigsfeld may have owned the funds invested himself, together with his mother. The funds from Krain composed virtually the entirety of $20 million received into Aberon, described in the Indictment. Indictment ¶ 2. The Indictment makes no factual allegations regarding any scheme to defraud "Investor 1" after 2012.

The second investor purportedly defrauded in what is described in the Indictment as a single fraudulent scheme was Krigsfeld's friend, Alex Hurst ("Hurst"), who we understand to be

---

[1] Victoria Neil Krain appears in some documents produced in discovery as "Kraine."

identified as Investor-2 in the Indictment.  While it is not stated in the Indictment, Hurst invested approximately $200,000 in Aberon, versus Krigsfeld and his mother's investment, according to the Indictment, of $20 million.  Thus, of the investments in Aberon, Krigsfeld's mother provided 99% of the funds.  Krigsfeld's friend Hurst, invested 1% of the funds in Aberon.  The allegations in the Indictment concerning Hurst begin in January 2013 and end with Hurst's full redemption of his investment on January 28, 2014.

As more fully described below, there is not a single conspiratorial agreement or scheme to defraud alleged in Counts One through Three in the Indictment, but two agreements and schemes, made up of two separate series of events, unrelated to each other, with different persons and goals, one pertaining to Krigsfeld's mother and her 99% investment in the fund, and a second concerning Hurst, who redeemed his 1% interest in 2014.  Thus, Counts One, Two and Three are duplicitous, and pose the risk of great prejudice to Jain due to a spillover effect, and differing statute of limitations dates for the two conspiracies/schemes present in Counts One, Two and Three.  These Counts, therefore, should be dismissed.

Furthermore, Counts One and Three are barred by the statute of limitations on the face of the Indictment.  These Counts allege only one act occurring within the five-year limitations period applicable to these charges.  This single allegation is found in paragraph 7(e) of the Indictment, which, to our understanding, alleges that on January 30, 2014, a voluntary payment was made by Krigsfeld's mother (Investor-1) to Krigsfeld, so that he could fully redeem his friend Hurst's 1% interest in Aberon, which left Krigsfeld's mother as the sole investor.  This act was not in furtherance of the conspiracy or part of any scheme to defraud alleged in the Indictment.  Thus, Counts One and Three of the Indictment allege no crime within the five-year statute of limitations, and should be dismissed for this reason as well.

Finally, this motion seeks the production of critical *Brady* and *Giglio* material. The discovery produced by the government contains exculpatory evidence mixed within voluminous financial documents and email. This exculpatory evidence includes the following: a) Krigsfeld's mother was informed of the value of Aberon; b) the funds were at least in part Krigsfeld's own money, and thus no agreement or intent could exist to devise a scheme to defraud himself; c) the alleged misrepresentations alleged in the Indictment were not to defraud Krain, but to be used by Krain in Europe for a limited time period for a reason unknown to Jain; d) Jain's withdrawal from the purported conspiracy, including that Jain, in or about 2012, notified Krigsfeld of his refusal to participate with Krigsfeld in communications and representations with anyone involving the value of Aberon; and e) our review of email evidence produced by the government indicates that exculpatory emails between Krigsfeld and Jain were deleted by Krigsfeld from these accounts prior to the government's obtaining the data.

The government has not identified any *Brady* material in this case. Thus, the government may not be recognizing the nature of the above-described evidence in its possession. The government, therefore, may have additional *Brady* material that it has not produced. Accordingly, this motion requests that the government be instructed to provide all *Brady* material in its possession, as well as *Giglio* material, as soon as possible.

## STATEMENT OF FACTS

The Indictment was returned on January 28, 2019. It alleges crimes arising from the actions of "Individual-1," which we understand to be Krigsfeld, and Jain, at Aberon.[2] The two purported victims of a fraudulent scheme are identified as Investor-1, who we understand is Victoria Krain, Krigsfeld's mother,[3] and Investor-2, who we understand is Hurst.

We further understand from the discovery that these are the only two purported investors in Aberon. Krigsfeld's mother, possibly together with Krigsfeld himself, invested $20 million or 99% of the fund's assets. Krigsfeld's friend, Hurst, invested only approximately $200,000, or 1% of the fund's assets. Aberon, therefore, was not in substance an investment business seeking out investors, as would appear from the Indictment, but was a Krigsfeld family enterprise. The aim of this enterprise, it appears from the discovery, included the movement of family funds located in Switzerland, Luxemburg and elsewhere into the United States by Krain, identified variously in the discovery as "VK," (Victoria Krain), the "Anchor," and the "sole investor."

The Indictment omits any indication that Aberon was a Krigsfeld business, formed to move his mother's, and likely his, funds into the United States and invest them. Instead, the Indictment simply alleges that Krigsfeld with Jain "raised approximately $20 million from investors" (Indictment ¶ 3). The discovery provided by the government, however, indicates that 99% percent of these funds were Krigsfeld's and his mother's funds, which they moved and used for their own purposes, which was the purpose of Aberon, not to raise money from investors.

---

[2] Aberon Capital Management was composed of several funds, which Krigsfeld with Jain operated from approximately 2009 to 2013, and by Krigsfeld after that time. In this Motion, as indicated, the funds will be referred to collectively as "Aberon."

[3] Certain discovery produced by the government indicates that the funds alleged to be from Investor-1 may be Krigsfeld's own money, or both Krigsfeld and his mother's funds.

The second identified investor, Krigsfeld's friend Hurst, invested only 1% of the funds in Aberon. He asked for and received a full redemption of his investment on January 28, 2014. *See* Indictment ¶ 7(e).

**The Indictment**

The Indictment alleges four Counts and a forfeiture allegation[4]. Count One alleges conspiracy, in violation of 18 U.S.C. § 371. The two aims of the conspiracy allegedly were a) to commit securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, by perpetrating "fraud and deceit" upon Investor-1, Krigsfeld's mother, Victoria Krain, and Investor-2, Krigsfeld's friend Hurst (Indictment ¶¶ 5) and b) to commit wire fraud in violation of 18 U.S.C. § 1343, by engaging in a "scheme and artifice to defraud, and for obtaining money and property" fraudulently from Krain and Hurst, and using wire communications as part of the scheme (Indictment ¶ 6).

The overt acts in Count One are found in paragraph 7, which paragraph is then incorporated into Counts Two and Three as the factual basis for these Counts. Because the Indictment was returned on January 28, 2019, it is immediately apparent from paragraph 7 of the Indictment, alleging overt acts, that only one overt act is alleged to have occurred within the five-year statute of limitations, which is found in paragraph 7(e). This one purported overt act within the statute of limitations reads, in its entirety, as follows:

> On or about January 30, 2014, Individual-1 [Krigsfeld] sent an email copying JAIN, directing the bank managing an operating account of the Investment Company [Aberon] to pay Investor-2 [Hurst] approximately $271,000, purportedly as a return on investment, when in fact, that money was not a return on Investor-2's investment, but was money received by the operating account from a third-party company controlled by Investor-1 [Krigsfeld's mother, Krain].

---

[4] Count One alleges conspiracy, Count Two alleges securities fraud, Count Three alleges wire fraud, and Count Four alleges a false statement to the Securities and Exchange Commission.

Indictment ¶7(e).

Thus, the one overt act within the statute of limitations does not allege an act in furtherance of any fraudulent scheme to deprive Hurst of money or property, but to redeem his investment, apparently in full. Moreover, it does not allege that the payment was part of any fraudulent scheme as against Krigsfeld's mother. The funds she provided were not for investment and were apparently provided to help Krigsfeld in his business.

Paragraph 7 from Count One was then incorporated in, and is the factual basis for, Count Three. Count Three purports to allege the operation of a single scheme to defraud both Krain and Hurst, and to deprive them of money and property, "through fraudulently altered documents," which is the same purported scheme alleged in Count One. Indictment ¶ 9, ¶ 11. Therefore, the only act alleged within five years of the date of the Indictment in Count Three also is the full payment (as indicated by the discovery) of Hurst by Krigsfeld, with the voluntarily assistance of his mother, who provided the funds from a company she controlled. Indictment ¶ 7(e).

As set forth below, the events, time period and aims of the alleged co-conspirators regarding Krain on one hand, and Hurst on the other, show that no single conspiracy or scheme to defraud Victoria Krain and Alex Hurst is alleged in Counts One, Two and Three, and that they are duplicitous and should be dismissed. Furthermore, Counts One and Three allege as the only act within the statute of limitations Krain's assistance to Krigsfeld to pay Hurst, which clearly was not intended to deprive Hurst of money or property, and thus was not part of the scheme to defraud alleged in Counts One and Three. Therefore, there are no acts alleged in the Indictment in Counts One and Three within the statute of limitations, and these Counts should be dismissed on this basis as well.

## ARGUMENT

### A.    Counts One, Two and Three Should be Dismissed for Duplicity

Rule 8(a) of the Federal Rules of Criminal Procedure requires that each charged offense be set out in a "separate Count." *United States v. Bergstein,* 2017 WL 1750392 *2 (S.D.N.Y. May 3, 2017)(Castel, J.).  As this Court stated, "[a]n indictment is impermissibly duplicitous where it combines two or more distinct crimes into one Count," and "the defendant is prejudiced thereby."  *Id.* (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).  A duplicitous count in an indictment is prejudicial to a defendant if it permits conviction by a non-unanimous jury, for example, by allowing 6 of the 12 jurors to find culpability on one crime, and the other six find culpability on a different crime charged in the same Count, improperly convicting the defendant.  *See id.* at *3; *United States v. Abakporo*, 959 F. Supp. 2d 382, 387 (S.D.N.Y. 2013).  Duplicitous counts also are prejudicial when used to permit the jury to improperly consider proof of one alleged conspiracy or crime count as proof for a separate conspiracy or crime, alleged together in the same count.  *United States v. Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997) (noting the risk of a prejudicial "spillover" effect from a duplicitous count).

While a fraud conspiracy count may properly allege a single agreement with multiple objects, and a single fraud against multiple victims, this is permissible in a case only so long as the count alleges "*a single scheme to defraud. . . .*"  *Abakporo,* 959 F. Supp. 2d at 388 (quoting *United States v. Tutino*, *883* F.2d 1125, 1141 (2d Cir. 1989)).  Similarly, for substantive securities fraud and wire fraud counts to not be duplicitous, each count must allege a single scheme to defraud.  *See United States v. Saporta*, 270 F. Supp. 183, 186 (E.D.N.Y. 1967)(count alleging securities fraud not duplicitous if it alleges a single scheme to defraud); *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992)(same, wire fraud). When a conspiracy or substantive count is duplicitous, the court may require that multiple fraudulent schemes alleged in a single

duplicitous count be dismissed, by requiring that the government supersede the indictment to divide the duplicitous count, and to allege the separate schemes in separate counts. *See Abakporo*, 959 F. Supp. 2d at 390–91 (ordering that the government reconfigure a duplicitous count in a superseding indictment if it wished to charge the defendants with both schemes). When a duplicitous count also presents a statute of limitations issue, as is presented here, dismissal of the count also is proper. *See, e.g., United States v. Gabriel*, 920 F. Supp. 498, 504 (S.D.N.Y. 1996)(citing cases).

Here, the Indictment alleges two conspiracies, and two separate schemes to defraud in Counts One, and Two and Three respectively, the first concerning Krain and Krigsfeld family funds, and the second concerning Hurst. Regarding Krain, Counts One, Two and Three allege that in 2012 Jain participated with Krigsfeld in preparing false financial documentation for Aberon pertaining to Krigsfeld's mother's investments. Indictment ¶¶ 7(a) and (b). These allegations from 2012 are the only factual allegations regarding any scheme to defraud Krain. Further, she invested virtually the entirety of the funds in Aberon, totaling 99%. The discovery indicates that she was aware of the specifics of the value of Aberon, which would end any alleged conspiracy, if one existed, at least by 2013. Finally, again showing that Krain was not the object of the same conspiracy or scheme to defraud concerning Hurst, on January 28, 2014 she apparently voluntarily assisted her son in fully redeeming Hurst's investment, derived from funds she controlled, separate from Aberon.

Hurst's investment, on the other hand, constituted a mere 1% of the fund. The allegations in the Indictment as to Hurst begin in 2013, after the events involving Krain, which allegedly were in 2012. *See* Indictment ¶ 7(c). Unlike Krain, Hurst received a full redemption of his interest. Indictment ¶ 7(e). The source of the payment was a company controlled by Krain,

apparently provided to her son. This payment from Krain through Aberon to Hurst alone demonstrates that the facts and events pertaining to Investor-1 and Investor-2 were separate conspiracies and "schemes," if there was any conspiracy or scheme at all.

The duplicity in charging two separate conspiracies and schemes in Counts One, Two and Three is highly prejudicial to Jain. There are no fraudulent acts alleged involving Investor-1 after 2012, and if alleged alone as conspiracy, securities and wire fraud, those Counts, and all claims involving Investor-1, would be barred by the statute of limitations. Those barred counts would concern $20 million, leaving only allegations about the other 1% of the fund, which was repaid to Hurst in any event. By improperly alleging that the $20 million Krain investment was part of a single scheme with the relatively miniscule and fully repaid investment by Hurst, the risk of spillover prejudice is substantial, because evidence regarding a purported separate scheme which would be time barred if alleged on its own could be entered against Jain. Thus, Counts One, Two and Three should be dismissed as duplicitous to prevent substantial prejudice to Jain.

### B. Counts One and Three Should be Dismissed as Barred by the Statute of Limitations

For the conspiracy alleged in Count One pursuant to 18 U.S.C. § 371 to be timely, an overt act in furtherance of the conspiracy must be alleged and proved within the five-year statute of limitations. 18 U.S.C. § 3282(a); *e.g., United States v. Mennuti*, 679 F.2d 1032, 1035 (2d Cir. 1982) (Section 371 requires proof of an overt act in furtherance of the conspiracy within 5 years of the return of the indictment). For Count Three, alleging wire fraud, the statute of limitations also is five years. 18 U.S.C. § 3282(a); *e.g., United States v. Bergstein,* No. 16-CR-746 (PKC), 2018 WL 2417845, at *8 (S.D.N.Y. May 29, 2018) ("for the continuing offense of wire fraud, the limitations period is five years").

In this case, the *only* overt act alleged within five years of the Indictment is found in Count One, paragraph 7(e). This paragraph was then incorporated into Count Three. Therefore, the sole alleged act within the statute of limitations on Counts One and Three is paragraph 7(e). Paragraph 7(e), however, does not allege an overt act in furtherance of the conspiracy charged in Count One, nor is it part of the purported fraudulent scheme alleged in Count Three.

Specifically, each of Counts One and Three allege a "scheme to defraud" Investors 1 and 2. This scheme is alleged to be the aim of the securities fraud and wire fraud conspiracy in Count One, and the substantive wire fraud alleged in Count Three. Counts One and Three, therefore, contain the same central allegation, which is agreeing to (Count One), and devising (Count Three) a scheme to defraud Investors 1 and 2.

The Second Circuit defined the elements of a scheme to defraud in *United States v. Maples*, 459 F.3d 154, 157 (2d Cir. 2006):

> the phrase "any scheme or artifice to defraud" is defined as: [A]ny plan, device or course of action that deprives another of money or property by means of false or fraudulent pretenses, representations or promises. It is, in other words, a plan to deprive another of money or property by trick, deceit, deception, swindle or overreaching.

*Id.* This definition "comports with the Supreme Court's command that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property." *Id.* (citation omitted).

Accordingly, in the present case, Counts One and Three allege as an element a scheme to defraud, which had the objective of obtaining money and property from Investors 1 and 2 using fake paperwork. The only purported overt act within the statute of limitations alleged in Count One, and the only act in Count Three alleged within the statute of limitations, was the *payment* to Hurst of his investment by Krigsfeld, through the assistance of his mother. This did not, and was

not intended to, deprive Hurst of money and property.  Nor  was it intended to defraud Krain. Therefore, the allegation in paragraph 7(e) is not part of a scheme to defraud Investor 1 or 2 of money or property.  Consequently, because, no overt act has been alleged within the statute of limitations on the face of Count One, and because no act of wire fraud has been alleged within the statute of limitations on Count Three, these Counts must be dismissed as barred by the five-year statute of limitations.

### C.    The Government Should be Required to Immediately Produce Brady and Giglio Material

The government has a duty to provide the defendant with exculpatory evidence of which it is aware, as well as "*Giglio* material" relevant to the impeachment of government witnesses. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005); *United States v. Avellino*, 129 F. Supp. 2d 214, 219 (E.D.N.Y. 2001) (requiring immediate production of *Brady* material, and *Giglio* material if it was not prejudicial to the government).

While the government has not identified any discovery items as *Brady* material, a review of discovery material produced by the government[5] has uncovered evidence that constitutes *Brady* material among a large quantity of financial documents and email.  This exculpatory evidence includes that: a) Krigsfeld's mother and her representatives were informed of the value of Aberon at least in 2012-13; b) the funds that purportedly were the object of fraud on Krigsfeld's mother were in part Krigsfeld's own money, and thus no agreement or intent could exist to devise a scheme to defraud himself; c) the alleged misrepresentations alleged in the Indictment which are claimed to be aimed at defrauding Krain, actually appear to be for the purpose of being used by Krain or other Krigsfeld family members in Europe for a limited time,

---

[5] The undersigned was recently retained in this matter.  Review of discovery material by counsel is ongoing.

for a financial reason unknown to Jain; d) Jain, in or about 2012, notified Krigsfeld that he refused to participate with Krigsfeld in communications and representations with anyone involving the value of Aberon, and withdrew from any purported conspiracy; and e) emails exculpatory to Jain were deleted by Krigsfeld prior to the government's obtaining the email.

Because no identification or notification of *Brady* material has been made, it appears that the government is not recognizing the exculpatory nature of this information, and thus may not have fully produced it or informed the Defendant of exculpatory evidence in the government's possession.

Accordingly, this motion respectfully requests that the government be instructed to immediately provide all *Brady* material in its possession and, because there would be no prejudice to the government, to provide *Giglio* material immediately as well.

## <u>CONCLUSION</u>

For these reasons, Defendant Niket Jain respectfully moves that this Court dismiss

Counts One, Two and Three as duplicitous, dismiss Counts One and Three as barred by the

statute of limitations, and require the government to produce *Brady* material and *Giglio* material

as soon as possible.

Dated: New York, New York
      January 17, 2020

                **EMMET, MARVIN & MARTIN, LLP**

              By: /s/ Paul T. Weinstein
                  Paul T. Weinstein (PW-8716)
                  120 Broadway
                  New York, New York 10271
                  (212) 238-3000
                  *Attorneys for Defendant Niket Jain*