UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

NIKET JAIN,

Defendant.

Docket No.:  19-cr-059 (PKC)

**MOTION OF THE DEFENDANT NIKET JAIN TO (I) DISMISS THE INDICTMENT: (A) FOR THE DEPRIVATION OF HIS RIGHT TO COUNSEL OF HIS CHOICE AND (B) FOR VIOLATION OF THE SPEEDY TRIAL ACT, AND (II) SUPPRESS A PURPORTED POST-ARREST STATEMENT**

**EMMET, MARVIN & MARTIN, LLP**
120 Broadway
New York, New York 10271
(212) 238-3000
*Attorneys for Defendant Niket Jain*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ................................................................1

    A.    The Indictment .................................................................1

    B.    Government Conduct Regarding Discovery, the Defendant's Right to Counsel of his Choice and Right to a Speedy Trial ............................2

    C.    Timeline of the Government's Repeated Representations to the Court that Discovery Was Substantially Complete and its Failure to Disclose or Produce the March 2020 Data for Over One Year .........................3

ARGUMENT ..........................................................................15

    A.    The Indictment Should be Dismissed Because the Government's Actions Prevented Defendant's Representation by his Counsel of Choice ............................................................................15

    B.    The Indictment Should Be Dismissed Based on a Speedy Trial Violation ...........................................................................19

    C.    The Purported Post-Arrest Statement of the Defendant Should be Suppressed or at a Minimum He is Entitled to a Hearing on his Motion to Suppress ......................................................................22

CONCLUSION ........................................................................25

# TABLE OF AUTHORITIES

## CASES

*Bloate v. United States*,
   559 U.S. 196 (2010) ............................................................................................ 19

*Maine v. Moulton*,
   474 U.S. 159 (1985) ............................................................................................ 16

*Michigan v. Mosley*,
   423 U.S. 96 (1975) .............................................................................................. 23

*Miranda v. Arizona*,
   384 U.S. 436 (1966) ...................................................................................... 22, 23

*United States v. Gonzalez*,
   764 F.3d 159 (2d Cir. 2014) ............................................................................... 23

*United States v. Gonzalez-Lopez*,
   548 U.S. 140 (2006) ............................................................................................ 15

*United States v. Meregildo*,
   920 F.Supp. 2d 434 (S.D.N.Y. 2013) ................................................................. 17

*United States v. Murray*,
   771 F.2d 1324 (9th Cir. 1985) ...................................................................... 20, 21

*United States v. Nelson*,
   193 F. App'x 47 (2d Cir. 2006) .......................................................................... 24

*United States v. Okparaeke*,
   No. 17-CR-225(NSR), 2018 WL 4003021 (S.D.N.Y. August 21, 2018) ...... 23, 24

*United States v. Pinto-Thomaz*,
   352 F.Supp.3d 287 (S.D.N.Y. 2018) .................................................................. 24

*United States v. Sezanayev*,
   17 Cr. 262, 2018 WL 2324077 (S.D.N.Y. May 22, 2018) ............................ 23, 24

*United States v. Stein*,
   541 F.3d 130 (2d Cir. 2008) ........................................................................ passim

*United States v. Tunnessen*,
   763 F.2d 74 (2d Cir. 1985) ................................................................................. 20

*United States. v. Oehne*,
   698 F.3d 119 (2d Cir. 2012) ............................................................................... 22

## STATUTORY AUTHORITIES

18 U.S.C. § 3161(c) ...................................................................................................... 19
18 U.S.C. § 3161(h)(7)(A) ............................................................................................ 20
18 U.S.C. § 3161(h)(7)(B)(iv) ...................................................................................... 20
18 U.S.C. § 3162(a)(2) ............................................................................................ 21, 22
18 U.S.C. §1361(h)(1)(H) ............................................................................................. 20

## PRELIMINARY STATEMENT

These Motions are respectfully submitted on behalf of Defendant Niket Jain (the "Defendant") to a) dismiss the Indictment for two fundamental reasons: (i) the Government's actions deprived the Defendant of his right to be represented by his counsel of choice and (ii) violation of the Speedy Trial Act; and, in addition b) to suppress the purported January 29, 2019 statement of the Defendant because any statements were made after he invoked his right to counsel.

As the Court is aware, for over one year in this case the Government failed to produce voluminous relevant data in its possession.  Instead, it repeatedly made seriously inaccurate representations to this Court, which had the effect of depriving the defendant of fundamental rights, including his right to be represented by the counsel of his choice and to receive a speedy trial.  Defendant cannot be put back in the position he would have been in without these violations, and the only available remedy, as set forth below, is dismissal of the Indictment.

Furthermore, the failure to disclose for over one year the fact that huge amounts of digital data existed and were discoverable is not the Government's only egregious failure to respect Rule 16 in this case.  On February 6, 2020, without explanation, the Government sent the defense a purported post-arrest statement from over one year prior.  The report of the statement was dated February 5, 2020, over one year after the arrest.  As set forth below and in the accompanying Affidavit of the Defendant dated March 13, 2020, the Defendant invoked his right to counsel upon his arrest, but arresting agents nevertheless conducted a custodial interrogation, and any resulting statements are subject to suppression.

## STATEMENT OF FACTS

### A.    The Indictment

The Defendant was indicted on January 28, 2019, and arrested the next day, on January 29, 2019.  The Indictment alleges that the Defendant with "Individual-1," who is Joseph Krigsfeld, in

their operation of Aberon Capital ("Aberon") conspired to and defrauded two investors, called "Investor-1" and "Investor-2."    As stated in the Defendant's pending motion to dismiss the Indictment for duplicity and on statute of limitations grounds (the facts of which are respectfully incorporated into this motion), Investor-2 clearly is Krigsfeld's friend Alex Hurst, who invested approximately $200,000, and later asked for and received full payment on his investment.  The Defendant believes that Investor-1 in substance is Krigsfeld himself and his mother, and possibly other family members.  The allegations, in summary, as the defense understands them, are that Krigsfeld and the Defendant made misrepresentations to Investor-1 and Investor-2 regarding trading losses in Aberon, essentially hiding losses incurred from legitimate trading.  As described in the Defendant's motion to dismiss for duplicity and on statute of limitations grounds: a) Krigsfeld and his family were 99% investors in Aberon and Hurst was a 1% investor, and b) the Defendant, apart from Krigsfeld himself, had no relevant contact with these Investors, who were Krigsfeld and his family and his friend, respectively.  Krigsfeld told the Defendant that his family was aware of the trading status and the value of their investment, that Hurst's investments had the value reported, and that Hurst's interest in Aberon was fully redeemed with no loss to Hurst.  Thus, as described more fully in the Defendant's motion to dismiss on duplicity and statute of limitations grounds, there was no scheme to defraud here.

**B.**    **Government Conduct Regarding Discovery, the Defendant's Right to Counsel of his Choice and Right to a Speedy Trial**

Set forth below are the facts, as far as Defendant is aware, relevant to the Government's improper conduct causing the deprivation of Defendant's counsel of choice and to a speedy trial. Many of the relevant facts in this regard remain solely within the knowledge of the Government, and need a hearing to be determined, which hearing is respectfully requested by the Defendant.  At present, the facts as they are known to the Defendant indicate the Government's intentionality in

failing to disclose the existence of and produce large amounts of relevant data for over one year (the "March 2020 Data"), causing the Defendant to be deprived of fundamental rights.  To definitively determine these facts a hearing will be required.

Set forth below are the facts as presently known and understood by the defense.  First, the current explanation of the Government is described, on how it came to withhold for over one year and then to disclose its possession of the March 2020 Data, long after it had repeatedly represented to the Court that its discovery was complete.  Next, a relevant history of discovery and the Government's representations to the Court and Defendant about discovery are set forth, followed by a recounting of how the Government's erroneous representations to the Court regarding its production of discovery led to the deprivation of the Defendant's right to counsel of his choice and a speedy trial.  Finally, the facts regarding the Government's decision to finally produce the March 2020 Data are recounted.

C.      **Timeline of the Government's Repeated Representations to the Court that Discovery Was Substantially Complete and its Failure to Disclose or Produce the March 2020 Data for Over One Year**

After his arrest on January 29, 2019, Defendant appeared before Magistrate Judge Barbara C. Moses, bond was set, and he subsequently was arraigned before this Court on February 14, 2019.

One year later, by letter dated February 13, 2020, the Government informed the Court that it had failed to disclose a vast amount of data.  Then, at a conference before the Court on February 26, 2020, the Government attempted to describe how this failure occurred.  A transcript of the February 26, 2020 conference is attached hereto as Exh. 1.  At the conference, the relevant colloquy between the Court and the Government was as follows (Transcript at pp. 2-3):

> THE COURT:  And good afternoon, Mr. Jain.  Please be seated.  Let me hear from the government.  Why did this discovery screw-up happen?  How did it

happen? What was your office's involvement in it happening, and has the material been produced to the defendant, and if so, when?

MR. RAYMOND: Your Honor, upon his arrest in 2018, the individual named as Individual-1 [Joseph Krigsfeld] in the indictment consented to having three devices of his imaged by the FBI. The FBI took custody of those images. The U.S. Attorney's Office, our office, did not at the time receive copies of those images. The Assistant U.S. Attorney from our office was notified that the FBI had these devices -- or had these images at the time, but did not -- did not focus on that issue. Upon the indictment of the defendant, the AUSA spoke with the case agent, who had taken the images of the devices, about discovery, and the case agent didn't mention or it was not discussed about these images. The case had since been reassigned or a new case agent was assigned to the case, and in beginning preparation for the trial scheduled March 30, the agent reminded and informed our office that these images existed in the custody of the FBI. We received a copy of the images yesterday.

THE COURT: Let me ask you, when did the new case agent come on?

MR. RAYMOND: I actually don't know the answer to that question, your Honor. I think it was late in 2019. I don't know the exact date.

THE COURT: When did the new case agent remind somebody of the existence of the images of the three devices?

MR. RAYMOND: I believe in early February, your Honor.

THE COURT: Of what year?

MR. RAYMOND: Of this year.

Mr. Raymond did not identify the relevant AUSA or the agents. Nor did he state whether the failure of the U.S. Attorney's office to obtain, review and produce the data was intentional, because, for example, the Government believed that it had enough evidence already, or that it had committed to a privilege review of the devices on behalf of Krigsfeld that had not been completed or reviewed, or that the Government became concerned that because the data had not been produced for so long, producing it now could be problematic, so it delayed, or some other reason. A hearing will be necessary to determine these facts. Nevertheless, based upon the details of the prior proceedings in this case and the representations of the U.S. Attorney's office to this Court

prior to February 26, 2020, it is difficult to perceive of how an Assistant U.S. Attorney ("AUSA") assigned to this case, who had been told, at the time of their seizure, of the existence of computers and a telephone comprising the March 2020 Data pertaining to Krigsfeld and Aberon, could have forgotten about this fundamental evidence for over a year.

Set forth below is a chronology of the Government's representations to the Court and the defense between January 2019 to March 2020 regarding its discovery and speedy trial.

1. On January 30, 2019 [Docket # 6] the Government wrote to the Court that speedy trial time should be excluded from that date to February 14, 2019 because "[d]uring this time, the Government intends to prepare discovery for production." On February 1, 2019, the Court granted the exclusion [Docket # 7], finding that, based on the Government's representation, "the grant of the continuance is needed to allow the government to prepare discovery for production."

2. On February 14, 2019, the AUSA assigned to this case appeared before this Court for the Defendant's arraignment. The AUSA was accompanied by FBI Special Agent Wayne Boddy [February 14, 2019 Docket Entry]. The Defendant was present with his counsel, Vinoo Varghese, Esq. A transcript of the February 14, 2019 proceeding before the Court is attached hereto as Exh. 2. The February 14, 2019 Transcript states in relevant part as follows (at pp. 2-4):

> MS. LA MORTE: Good morning, your Honor. Tara La Morte for the government. With me at counsel table is Wayne Bodey [Boddy] of the FBI.
>
> THE COURT: Good morning, Ms. La Morte, and good morning, Mr. Bodey [Boddy]? And for the defendant?
>
> MR. VARGHESE: Good morning. Varghese & Associates by Vinoo Varghese for Mr. Jain. At counsel's table is our paralegal, Charles Calkins.
>
> THE COURT: I have an indictment that has been docketed under 19 CR 059 which contains a conspiracy count, a count for securities fraud, wire fraud, and obstruction of justice as well as forfeiture allegations.

Has the defendant received, reviewed, and discussed with you the charges in the indictment?

MR. VARGHESE:  Yes, your Honor.

THE COURT:  Is there an application to waive the public reading thereof?

MR. VARGHESE:  Yes, it's not necessary.

THE COURT:  Mr. Jain, how do you plead to the charges in the indictment.

THE DEFENDANT:  Not guilty, your Honor.

THE COURT:  A plea of not guilty will be entered on the record.

Ms. La Morte, please tell me in general terms -- please be seated.  Please tell me in general terms what the nature of the discovery is and the volume.

MS. LA MORTE:  Yes, your Honor.  So, generally, discovery consists as follows:  It will be some e-mail correspondence involving the defendant, his partner at the hedge fund and various third parties, there will be SEC deposition testimony and exhibits, and then there are a large number of financial documents from various banks and brokers. And then an assortment of documents from the hedge fund itself, including its founding documents and various documents and value statements, etc., that were produced by the hedge fund.

In terms of volume, I'm prepared to produce at least 90 percent of it today which I have with me, and that portion is approximately a little bit over 10,000 pages, but it is the overwhelming portion of discovery.  The remaining part of discovery I can produce in a fairly short amount of time.  I'm just going to request, in consultation with the defense, a standard protective order for the remainder.

THE COURT:  Mr. Varghese, you're going to need time to review the material, discuss it with your client, and be in a position to return to advise me whether you have any motions in this case, correct?

MR. VARGHESE:  That's correct, your Honor.

THE COURT:  Would April 17, at 11 a.m. be convenient?

MR. VARGHESE:  Yes, your Honor.

THE COURT:  Same question for the government.

MS. LA MORTE:  Yes, your Honor.

THE COURT:  All right.  And thank you.  I'll hear the government's final application.

MS. LA MORTE:  Your Honor, the government moves to exclude time in the interest of justice.  I just set forth the nature of the discovery and the volume, and I believe the defense needs that time or time should be excluded to allow the defense time to review that material and determine whether or not it has any motions.

THE COURT:  All right.  Mr. Varghese, your position?

MR. VARGHESE:  No objection, your Honor.

THE COURT:  I find that the ends of justice will be served by granting a continuance to April 17, 2019, and that the need for a continuance outweighs the best interests of the defendant and the public in a speedy trial.

The reasons for my finding are that the time is needed for the government to make discovery available, for defense counsel to review it, to discuss it with his client, and be in a position to return to advise the Court whether there are any motions he wishes to make in the case.  And accordingly, the time between today and April 17 is excluded under the Speedy Trial Act.

Thus, on February 14, 2019 the Court was not aware of the March 2020 Data when, based upon the Government's representation that discovery would be substantially complete that day, it excluded time in the interests of justice to April 17, 2019.  The defense does not know whether Agent Boddy was the case agent who had informed the AUSA of the March 2020 Data.

3.  On March 5, 2019 [Docket # 9], the Government submitted a proposed Protective Order governing discovery produced by the Government, which this Court signed on that date [Docket # 10].

4.  On April 11, 2019 [Docket # 12], then defense counsel, Mr. Varghese, requested a continuance to May 31, 2019, and an exclusion of speedy trial time, to review discovery.  Mr. Varghese made this request without knowledge of the March 2020 Data.

5.  On May 17, 2019 [Docket # 14] the Government wrote to the Court in relevant part as follows:

In advance of the upcoming pretrial conference in this matter, which is scheduled for May 31, 2019, the Government writes respectfully to apprise the Court of the status of discovery. On or about May 2, this Office learned that additional discovery--primarily emails--had inadvertently not been produced. The Government immediately notified defense counsel that additional discovery existed, and would be produced as soon as possible. The Government accordingly served additional discovery via overnight delivery on or about May 17, 2019.

The discovery produced on May 17 consists overwhelmingly of emails derived from two separate email accounts. The first email account is a business account of the defendant's former hedge fund partner. That account contains a total of roughly 20,000 emails, including, *e.g.*, deleted emails, sent emails, spam emails, and unread emails. The second account is the former partner's personal email account. From that account, the Government produced all correspondence that includes the defendant, amounting to approximately 1,400 emails. The government intends to apply search terms to the remaining emails contained in that personal account, and aims to make any additional productions by the end of June.

The Government did not explain in its May 17, 2019 letter how it had discovered in May 2019 that it had inadvertently failed to produce this large amount of electronic discovery. Nor, while telling the Court that the U.S. Attorney's Office just learned of the email, did the Government inform the Court or the defense of the March 2020 Data, which was vastly more voluminous.

6. On May 24, 2019 [Docket # 15], Defendant's counsel requested a continuance to "early August to allow the defense time to review the recent discovery produced by the government as well as the additional discovery the government has indicated it will produce before the end of June." On May 28, 2019 [Docket # 16], the Court moved the conference to August 1, 2019, and excluded speedy trial time, finding that that "the grant of the continuance is needed to allow time for the government to produce discovery and for defense to review the discovery."

At that time, neither the Court nor the defense knew of the March 2020 Data.

7. On August 1, 2019, the Government and defense counsel appeared before the Court for a conference. The transcript of the August 1, 2019 court appearance is found at Docket # 19, and

a copy is also attached hereto as Exh. 3.  At the conference, the Court asked the Government whether discovery had been completed by "mid May of this year," to which the Government responded (Transcript at p. 2):

> Actually, your Honor, at the end of June.  In mid May I submitted to the court a letter, and on that date I produced discovery and I indicated to the court in that letter that the remaining part of discovery would be produced by the end of June.  On June 26 we had Fed Exed the remaining discovery, consisting primarily of emails, to the defendant.

When the Court asked defense counsel whether he had had sufficient time to review the new discovery (Transcript at p. 3), defense counsel raised concerns about the email, including that he could not identify where it was obtained, that it appeared corrupted, and that emails appeared deleted (Transcript at pp. 3-5).  Defense counsel raised with the Court difficulty in accessing the electronic discovery provided, and that there had been many communications with the Government regarding the electronic data to try to resolve the issue.  (Transcript at pp. 9-10).

The Government, however, represented to the Court that discovery was complete, and further stated that "[t]he government would just say that it is interested in moving the case forward and so would hope that we would be able to set motion and trial dates sometime soon."  (Transcript at p. 11).  The Court then excluded speedy trial time from August 1, 2019 to October 11, 2019 based upon the Government's representation that discovery was complete, to give time to the defense to review it and "to discuss with the government any issues it has with adequacy of discovery . . . ."  (Transcript at p. 13).  Defense counsel, which agreed with the exclusion to August 1, 2019, was unaware of the undisclosed March 2020 Data.

8.  On October 10, 2019 [Docket # 26], in anticipation of a conference on October 11, 2019, the Defendant's counsel wrote to the Court listing multiple issues with electronic discovery, including that he was "waiting on answers from the government on the authenticity and

completeness of its discovery," and that defense counsel had had a continuing dialogue with the Government over electronic discovery and the source of the data.

9.  On October 11, 2019, the Government and the Defendant's counsel appeared before the Court for a status conference.  A transcript of this appearance is found at Docket # 29, and a copy is also attached hereto as Exh. 4.  A central issue raised to the Court by the Defendant's counsel was whether the government had provided "complete work e-mail" in discovery and to determine the "source of those emails."  (Transcript at p. 5).  The Court asked the Government to respond, and stated to the Government "[h]ow long does the government need to get this -- to respond and to be in a position to have all of its discovery complete?"  The Government then represented to the Court:

> Your Honor, the government is in compliance with its Rule 16 obligations and has been so for some time.  I can state here on the record now with respect to the first question they have a complete copy of that e-mail that they have requested so that is done.

> As far as the source of the e-mails for the particular e-mail account that they referenced in their second question, I can say that that's an e-mail can [sic] account that was accessed by the FBI directly into the account.  It was not obtained pursuant to a search warrant.  That has been known for months and months in this case.

> The only -- we have a handful, literally a handful of documents to produce, which I will do by next week.  And the only other issue that the government is aware of is that we had discovered in the course of reviewing our own materials that some of the chats that we had produced between the defendant and the coconspirator, there was portions of it that were garbled, must be some technology glitch.  So we will reproduce those so that they're clean.  That wasn't raised to us by the defense.  It's something we discovered don our own.

> But we have been in compliance with Rule 16 for some time.

> The last time we met was in August.  At that time the government had indicated that it wanted to move this case forward and at that time I believe the Court was amendable to setting dates for moving forward at this conference.

(Transcript at pp. 5-6).

Based upon the Government's representations the Court indicated that it would set a trial date, to which the Government responded that it was "ready." (Transcript at p. 8). The Court set the trial date for March 30, 2020 (Transcript at p. 8) following which the Government moved to exclude speedy trial time "in the interests of justice," on the bases that "[t]here are motions pending. The government has limited additional discovery that will allow the defense to consider its motions and then in addition to prepare for trial." (Transcript at p. 9). Based on the Government's representations the Court found that a speedy trial exclusion from October 11, 2019 to March 30, 2020, which is over 150 days, was in the interest of justice because "the time is needed to resolve the discovery -- minor discovery issues that need to be resolved in terms of reproducing certain materials and cleaning up any remaining discovery, to permit the defense to file a bill of particulars and statute of limitations motion in the next 14 days if they choose to go that route, and for the parties to prepare for trial." (Transcript at p. 9).

10.   On October 25, 2019, the Defendant moved for a bill of particulars to determine particulars regarding the Overt Act alleged in Paragraph 7(e) in the Indictment, which stated that a company controlled by Investor-1 paid Aberon so that Aberon could pay Hurst, Investor-2. The Government opposed the motion [Docket # 32] based on the purported comprehensiveness of its discovery, claiming that "[t]he Government has produced evidence underlying these allegations in broad discovery disclosures" *id*. at 2; *see also id*. at p. 3.

In fact, however, at that time, unbeknownst to the Court and the defense, large amounts of relevant data possessed by the government had not been produced.

11.   On November 25, 2019 [Docket # 33], attorney Benjamin Allee, Esq. filed a notice of appearance for the Defendant. The next day, Mr. Allee informed the Court by letter that he was substituting for Mr. Varghese as the Defendant's lawyer but that he needed "a brief adjournment

of the scheduled trial date of March 30, 2020," because of a prior personal commitment.  [Docket # 34].  The Government did not inform that Court, and thus it was unaware, that discovery actually was not complete, and that the Government had failed to produce large amounts of relevant electronic data.  The Court, being unaware of the unproduced March 2020 Data and believing discovery to be complete, denied Mr. Allee's request, precluding him from representing the Defendant.  [Docket # 35].

12.  On December 6, 2019 [Docket # 39], Mr. Allee again wrote to the Court asking that a conference be scheduled, and that the Court reconsider moving the trial date.  The same day [Docket # 40], the Court endorsed Mr. Allee's letter by setting the conference for December 19, 2019 but, being unaware that large amount of discovery still had not been produced by the Government, wrote that "[c]andor requires me to advise Mr. Jain that if he wishes new or additional trial counsel, he should assume the trial will proceed on the existing schedule."  The Government took no steps to inform the Court that the trial could not proceed as scheduled, because of the large amount of relevant data that had not been produced by the Government.

13.  By Opinion and Order dated December 18, 2019 [Docket # 46], the Court denied the Defendant's motion for a bill of particulars, finding, based entirely on the Government's representation, that a bill of particulars was "unnecessary" because the Indictment was "supplemented by discovery material" and "no additional information is necessary for trial preparation or to prevent surprise."  *Id*. at pp. 2-3.

14.  On December 19, 2019, Mr. Allee and the Government appeared before the Court for a conference.  A copy of the December 19, 2019 transcript is attached hereto as Exh. 5.  Mr. Varghese also appeared, seeking to be relieved as counsel.  Mr. Allee first again requested to move the trial date, and stated that if it was not moved, he could not act as the Defendant's counsel and

that the Defendant would need to find another lawyer. *Id.* at 3. The Court concluded, however, that there was no basis for moving the trial date, which would have permitted Mr. Allee, the Defendant's counsel of choice, to represent the Defendant. The Court explained:

> What anyone looking at this can see is that the Court set this trial date. It was in November, I believe. No. It was October 11th when the trial date was set. There is not an issue here, as there sometimes is, of late discovery or late production of discovery materials by the Government, or some Government misconduct or some compelling circumstance. I've had cases with terabytes of discovery material and I've moved trial dates quite often so I'm openminded about that.

(Transcript at pp. 10-11).

The Government, however, did not inform that Court that in fact there was late disclosure of "terabytes of discovery material," in light of which, as the Court stated, it would have moved the trial date. Because the Government withheld this information from the Court, the trial date was not moved and the Defendant was deprived of representation by his counsel of choice.

15. With Mr. Allee unable to serve as counsel in this matter, the undersigned filed a notice of appearance as Defendant's counsel on January 2, 2020 [Docket # 49].

16. On February 6, 2020, with no notice or explanation to defense counsel, the Government sent a letter to defense counsel with a purported January 29, 2019 post-arrest statement of the Defendant. The Affidavit of Defendant, Niket Jain, sworn to on March 13, 2020, is attached hereto as Exh. 6. A redacted copy of the Defendant's purported post-arrest statement is attached to Defendant's Affidavit for public filing, and an unredacted version of the statement will be provided to the Court under seal. As set forth in the accompanying Affidavit, Defendant, upon his arrest, invoked his right to counsel. Nevertheless, law enforcement agents proceeded to question him in violation of the Defendant's *Miranda* rights, thus requiring suppression, as discussed further below. The Government has provided no explanation for producing a post-arrest statement over one year after the Defendant's arrest, and further has refused to indicate whether it intends to use

the statement at trial, requiring this suppression motion.  The Government has agreed to provide the notes from which the report of the statement was prepared.  To date it has failed to do so.

17.  On February 11, 2020, defense counsel wrote to the Government, raising four issues. A copy of the February 11, 2020 Letter is annexed hereto as Exh. 7.  Among other things, in the letter the defense objected to the failure of the Government to state the identity of Investor-1, and stated that attempting to keep the identity of the purported victim secret was a lack of due process and is unconstitutional.  *Id.* at p. 2.  The letter also stated that the Government had told both the Court and the defense that it would produce 3500 material for Joseph Krigsfeld shortly, but had failed to do so for a significant period of time.

18.  On February 12, 2020, the Government called the undersigned.  During the call, the Government informed the defense that the Government was in possession of three devices – two computers and a cell phone (the March 2020 Data) – obtained from Krigsfeld that were being downloaded, and that the data, which was voluminous but, the Government stated, largely unknown, did contain statements of Krigsfeld relating to the charges in this case.  The Government also stated that "Investor-1" was "Akros."

19.  Also on February 12, 2020, almost exactly one year after the Defendant's arraignment at which the Government stated that discovery essentially was complete, the Government produced thousands of pages of financial records relevant to this case that it received in 2017 pursuant to 12 grand jury subpoenas.  It has provided no explanation for this disclosure, again over a year after the Defendant's arrest.

20.  On Friday, February 28, 2020, the defense received a hard drive which, the defense was told, contained the contents of two computers.

21. At the Court conference on March 3, 2020, the Government told the Court that the contents of the cellphone were available and that the defense could obtain the contents by providing a hard drive to the Government. The defense provided the hard drive on Monday, March 9, 2020. The data was produced on March 13, 2020, the date of filing of this Motion.

## ARGUMENT

### A.    The Indictment Should be Dismissed Because the Government's Actions Prevented Defendant's Representation by his Counsel of Choice

In late November 2019, Benjamin Allee, Esq. was selected the Defendant as his trial counsel. Mr. Allee filed a notice of appearance on November 25, 2019. He asked for a brief movement of the trial date to accommodate a personal commitment. On November 26, 2019 and December 19, 2019, this Court, relying entirely upon the Government's representation that discovery was substantially complete, refused to move the March 30, 2020 trial date to permit Mr. Allee to represent the Defendant. The present evidence is that at that time the prosecution team was composed of the U.S. Attorney's Office and FBI Agents, and both knew on November 26, 2019 and on December 19, 2019 that large amounts of relevant data had not been provided to the defense and that therefore discovery was far from complete. Had the Court been provided with this information, it would have moved the trial date, and Defendant would have been represented by Mr. Allee. Exh. 5 (December 19, 2019 Transcript at pp. 10-11). Therefore, the Government's actions prevented the Defendant's representation by his counsel of choice and the Indictment should be dismissed. *See United States v. Stein,* 541 F.3d 130 (2d Cir. 2008).

Pursuant to the Sixth Amendment right to counsel, a criminal defendant who can afford to retain counsel has the right "to choose who will represent him." *Id.* at 154 (quoting *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)). Government interference in a defendant's right to

be represented by the counsel of his choice is a constitutional violation. *Id.* at 154 (citing *Maine v. Moulton,* 474 U.S. 159, 170-71 (1985)).

The Sixth Amendment right of a criminal defendant to be represented by the counsel of choice and the implications of the Government's action affecting that right was considered by the Second Circuit Court of Appeals in *United States v. Stein.* In that case, the Government investigated the accounting firm KPMG, LLP ("KPMG") and certain of its employees concerning purportedly fraudulent tax shelters. *Id.* at 137. KPMG sought to cooperate with the Government to avoid indictment. The Government communicated to KPMG that the firm would be viewed as cooperative if it conditioned the advancement of legal fees to its employees on the employees' cooperation with the government. *See id.* at 138-39. KPMG, which prior to the tax shelter investigation had advanced attorney's fees to employees under similar circumstances, changed its policy under pressure from the Government to terminate the advancement of attorney's fees to its employees who did not cooperate with the Government's tax shelter investigation. *Id.* at 139.

The Government indicted at least thirteen of the employees whose advancement of fees were terminated for lack of cooperation, while KPMG received a deferred prosecution agreement. *Id.* at 140. These thirteen employees (among others) moved to dismiss the indictment arguing that the Government's actions caused the termination of KPMG's advancement of fees, affecting the defendant's right to representation by the counsel of their choice. *Id.*

A comprehensive hearing was then held to precisely determine the Government's actions and their affect upon the defendant's right to counsel. *Id.* at 139-40. After the hearing, Judge Kaplan determined that the Government's actions were responsible for KPMG's decision to not advance legal fees to the defendants, and that, while the defendants subsequently were represented by able counsel, these governmental actions affected the defendants' right to use all resources at

their disposal to be represented by their counsel of choice, and thus violated the Sixth Amendment right to counsel. *Id.* at 141, 151.

The district court also held, and the Second Circuit affirmed, that because an improper action by the Government affected the defendants' right to counsel, a constitutional violation was established requiring the dismissal of the indictment. As the Second Circuit summarized, the district court "determined that defendants need not show how their defense was impaired: the government's interference with their Sixth Amendment 'right to be represented as they choose,' 'like a deprivation of the right to counsel of their choice, is complete irrespective of the quality of the representation they receive.'" *Id.* at 141 (citation omitted). In *Stein*, therefore, the Second Circuit held that the district court properly dismissed the indictment as against the thirteen affected defendants because the Government's actions interfered with these defendants' Sixth Amendment right to freely select counsel of their choice, and, further, that once this violation occurred it could not be cured. *Id.* at 145-46.

The present case is governed by *Stein*. While the Court may find that a hearing is required to precisely determine the facts, in the present case, based on the Government's representations and the record to date, pursuant to *Stein* the record shows that the representations about discovery and electronic data and email, and that the FBI case agent knew of the data, and that the case agent told the assigned AUSA, among other facts are sufficient to show intentionality here.

The present investigation and prosecution were a joint endeavor by the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation, who compose a single prosecutorial team. *See, e.g., United States v. Meregildo*, 920 F.Supp. 2d 434, 440-41 (S.D.N.Y. 2013)("investigating case agents are part of the prosecution team"). A prosecutor is deemed to have knowledge possessed by a member of the prosecution team. *Id.*

Here, while the knowledge of the FBI is imputed to the Office, in fact, both the prosecutor and the case agent had actual knowledge of the March 2020 Data from the inception of this case, but failed to disclose it for over a year. The critical facts in this regard are summarized as follows:

1. The FBI and U.S. Attorney's office jointly are prosecuting this case.

2. The March 2020 Data is a very large amount of relevant and discoverable data.

3. The FBI case agent and lead prosecutor knew of the March 2020 Data at the time of the Defendant's arrest.

4. At the Defendant's arraignment before this Court on February 14, 2019, the prosecutor summarized the discovery for the Court and the Defendant, but omitted the March 2020 Data. The case agent, or an agent from the squad that was part of the prosecutorial team in this matter, was present with the prosecutor and seated at counsel's table when the AUSA made these representations.

5. For approximately one year following Defendant's arraignment, the prosecutor repeatedly informed the Court erroneously that discovery effectively was complete, and on that basis asked for and supported the Court's exclusion of speedy trial time in the interests of justice, without disclosing the March 2020 Data. The exclusions based on these incorrect representations comprised over four times the 70-day speedy trial statutory period.

6. In late November 2019, Defendant retained Benjamin Allee as his counsel. Mr. Allee requested a new trial date because he was unavailable on March 30, 2020. The Government did not inform the Court that a new trial date would be necessary in any event because the Government had an enormous amount of undisclosed relevant discovery. The Court denied Mr. Allee's request, precluding his retention as trial counsel. In doing so, the Court stated that this was not a case involving Government misconduct or where large amounts of digital data was produced late,

which, if it had been the case, the Court would move the trial date and the Defendant would be accorded his counsel of choice. Again, however, the Government said nothing. (Exh. 5, December 19, 2019 Transcript at pp. 10-11). The trial date was not moved. The Defendant was forced to retain different counsel, which he did.

7. On February 12, 2020, the Government disclosed the March 2020 Data. It is composed of at least two terabytes of discovery, to the defense's understanding.

8. After this governmental misconduct of the extremely late disclosure of terabytes of relevant digital data, the Court moved the trial date from March 30, 2020 to June 1, 2020.

Under these circumstances, the Government's improper actions were the cause of Defendant's denial of his counsel of choice. Thus, the Indictment should be dismissed. *See United States v. Stein*, 541 F.3d 130.

Furthermore, this deprivation was not cured by the opportunity afforded by the Court for the Defendant, having been charged over one year ago, to go back and seek to retain Mr. Allee for a new trial date in May 2020. Defendant has limited funds and has spent a significant portion of his funds on new counsel, who has prepared for trial since January 2, 2020. As a practical matter, it is not an option at this time to rehire Mr. Allee, which would require Defendant, with very limited resources, to redundantly pay a second lawyer to perform the same trial preparation that he already has paid his present lawyer. It simply is not possible at this point, because of the Government's withholding of huge amounts of data from the knowledge of the Court and defense, for the Defendant to retain Mr. Allee. If the Court determines that more information is needed in this regard, Defendant can provide additional information at a hearing, under seal if necessary.

**B.    The Indictment Should Be Dismissed Based on a Speedy Trial Violation**

The Speedy Trial Act required that the Defendant's trial be scheduled within 70 days of his January 29, 2019 initial appearance in this case. *See* 18 U.S.C. § 3161(c); *Bloate v. United*

*States*, 559 U.S. 196, 203 (2010).  As relevant here, time may be excluded from the 70 day calculation for the time period, up to 30 days, that motions are actually pending before the Court, 18 U.S.C. §1361(h)(1)(H), and when the Court finds that an exclusion of time serves "the ends of justice," in that the continuance outweighs "the best interest of the public and the defendant" in a speedy trial.  18 U.S.C. § 3161(h)(7)(A).  For the latter ends-of-justice exclusion to be proper, the Court must set its reasoning on the record.  *Id.*  The relevant factors for the Court's determination of whether to find an ends-of-justice exclusion include whether the failure to grant the continuance "would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv).  Pursuant to Section 3161(h)(7)(C), however, "[n]o continuance under subparagraph (A) of this paragraph [Section 3161(h)(7)(A), the "ends-of-justice" exclusion] shall be granted because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."

Critically, in considering whether an ends-of-justice exclusion was proper, the only bases that may be considered are those identified by the Court at the outset of the exclusion period. *United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985).  Thus, if the ends-of-justice findings were made by the Court based on inaccurate information provided by the government, a sufficient basis for the exclusion did not exist, and the government "may suffer the sanction of retroactive revocation by the trial judge of the time extension previously granted."  *See United States v. Murray*, 771 F.2d 1324, 1327 (9th Cir. 1985).

In the present case, the Court excluded time, in large measure upon the Government's application, for almost one year in the interests of justice, based on the Government's representations to the Court that discovery was substantially complete and that the Defendant

needed time to review the evidence that the Government had produced. These representations were not accurate. When these erroneous representations were made by the Government and time was excluded on February 14, 2019, on August 1, 2019 and on October 11, 2019, the prosecution team, composed of the U.S. Attorney's Office and the FBI, and each of them, had knowledge of the existence of large amounts of undisclosed discovery, that discovery in fact was far from complete, and that the discovery being reviewed by the defense for trial preparation, represented to be the totality of relevant material, actually was a fraction of the relevant data in the Government's possession. The other speedy trial exclusions apart from those in the interests of justice, which were for motions, were minimal. These exclusions, based on representations that the government had knowledge were inaccurate, totaled the better part of one year, and many times the 70-day statutory speedy trial period. Without a doubt, the exclusions had an erroneous basis because of the Government's incorrect representations, and these incorrect representations were based on the Government's own improper conduct. The exclusions, therefore, should be retroactively rescinded, and the Indictment dismissed for a speedy trial violation. *See Murray*, 771 F.2d at 1327.

If an Indictment is dismissed based upon a speedy trial violation, the Court has discretion to dismiss with or without prejudice. 18 U.S.C. § 3162(a)(2). The factors the Court applies to determine whether the dismissal is with or without prejudice include, according to § 3162(a)(2), among other things, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

Here, the Indictment should be dismissed with prejudice. We do not trivialize the charges in the Indictment. Defendant takes them very seriously. Yet, the fact is that this case was old

when commenced, as seen in the Defendant's meritorious motion to dismiss pursuant to the statute of limitations. Moreover, the central person involved in the purported stock and wire fraud is not the Defendant. It is the cooperating witness, Joseph Krigsfeld. Defendant did not earn a large amount from Aberon, the fund at issue here, and as the defense understands it, he is not alleged to have personally improperly taken investor money. The purported losses were from legitimate trading. Additionally, the claimed false statement to the Securities and Exchange Commission, again without trivializing the charge, was that the Defendant when asked was not accurate in describing his involvement in creating a purportedly incorrect statement years earlier, at Krigsfeld's direction, regarding funds Defendant believed to be Krigsfeld's and his family's, and not for the purpose of taking any money. In sum, it appears beyond debate that the present case is not by any stretch a priority case for the Southern District of New York, but, on the other hand, that Office's inattentiveness to this matter fully demonstrates that the Government does not itself view this case as a serious one. Similarly, the facts and circumstances that should lead to dismissal occurred in the first place because the Government did not view this case as serious and thus paid egregiously little attention to its discovery obligations. A reprosecution, therefore, would in effect excuse the Government from its conduct here while causing substantial damage to Defendant, who is not responsible for the Government's failure to abide by its obligations in this prosecution.

Under these circumstances, the Indictment should be dismissed with prejudice pursuant to 18 U.S.C. § 3162(a)(2).

### C.    The Purported Post-Arrest Statement of the Defendant Should be Suppressed or at a Minimum He is Entitled to a Hearing on his Motion to Suppress

It is axiomatic that "[u]nder *Miranda v. Arizona*, 384 U.S. 436 (1966), 'the prosecution may not use statements made by a suspect under custodial interrogation unless the suspect (1) has been apprised of his Fifth Amendment rights, and (2) knowingly, intelligently, and voluntarily

waives those rights.'" *United States v. Sezanayev*, 17 Cr. 262 (LGS), 2018 WL 2324077, *11 (S.D.N.Y. May 22, 2018) (quoting *United States. v. Oehne*, 698 F.3d 119, 122 (2d Cir. 2012)). "If a suspect invokes his *Miranda* rights to remain silent or to counsel, 'interrogation must stop and the invocation must be 'scrupulously honored.'" Id. (quoting *United States v. Gonzalez*, 764 F.3d 159, 165–66 (2d Cir. 2014) (quoting *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)). Therefore, "[i]f a Defendant is subjected to a custodial interrogation and invokes their right to counsel, the interrogating agents must cease their questioning immediately." *United States v. Okparaeke*, No. 17-CR-225 (NSR), 2018 WL 4003021, *5 (S.D.N.Y. August 21, 2018)(citing *Gonzalez*, 764 F.3d at 165).

Here, the Government, again showing its damaging inattentiveness and lack of respect for its discovery obligations or the rights of the Defendant, after one year produced a purported post-arrest statement of the Defendant, with no explanation. The statement is annexed to the Affidavit of the Defendant, which is attached hereto as Exh. 6. The arresting agent as reflected in the report was F.B.I. Agent Wayne C. Boddy, who is the same Agent who sat at the prosecution's table during Defendant's February 14, 2019 arraignment when the AUSA stated that 90% of the Government's discovery would be produced that day. The Government detailed its discovery at that court appearance, and no statement of Defendant's was mentioned, even though Agent Boddy was present.

As set forth in Defendant's affidavit, after his arrest and while in custody, prior to being placed in a vehicle, Defendant invoked his right to counsel. Yet Agent Boddy questioned him anyway. Perhaps this is why no report of the purported statement was created for over one year, and why it was not mentioned when the list of discovery was put on the record at Defendant's arraignment. In any event, the purported statements of the Defendant must be suppressed as the

product of custodial interrogation after Defendant invoked his right to counsel. Because the Defendant had invoked his right to counsel prior to questioning, the arresting agents were required immediately to cease asking him questions. *Sezanayev*, 2018 WL 2324077 at *12 (suppressing post-arrest statements made by the defendant regarding banking information upon questioning by the arresting agent after the defendant had invoked his right to counsel); *Okparaeke*, 2018 WL 4003021 at *5.

The Government has refused to inform the defense whether it intends to use any claimed post-arrest statement, necessitating the present motion. If the Government continues to equivocate or opposes this motion, it is respectfully submitted that the Court should conduct an evidentiary hearing on Defendant's motion to suppress the contents of the post-arrest statement. A suppression hearing "ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural", which certainly is the case here. *See Okparaeke*, 2018 WL 4003021 at *6, n.5 (citing *United States v. Nelson*, 193 F. App'x 47, 48 (2d Cir. 2006)(necessary to hold a suppression hearing concerning the question of whether or not the agent violated the defendant's right to counsel, possibly requiring suppression of certain statements, when, during the course of the defendant's interview with the arresting agent, the defendant requested counsel); *United States v. Pinto-Thomaz*, 352 F.Supp.3d 287, 311 (S.D.N.Y. 2018) (suppression hearing warranted as to whether the defendant in fact invoked his right to counsel prior to being questioned concerning his iPhone passcode).

In view of the foregoing, is respectfully submitted that Defendant's purported post-arrest statements should be suppressed.

## CONCLUSION

For these reasons, Defendant Niket Jain respectfully moves to dismiss the Indictment because he was deprived of his counsel of choice and because the Speedy Trial Act was violated. Additionally, the purported post-arrest statement of the Defendant produced by the Government over one year after the Defendant's arrest should be suppressed because Defendant invoked his right to counsel prior to his custodial interrogation.


Dated: New York, New York
       March 13, 2020

                                    **EMMET, MARVIN & MARTIN, LLP**

                                    By: /s/ Paul T. Weinstein
                                         Paul T. Weinstein (PW-8716)
                                         120 Broadway
                                         New York, New York 10271
                                         (212) 238-3000
                                         *Attorneys for Defendant Niket Jain*