**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2020

**BY ECF and EMAIL**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Niket Jain*, 19 Cr. 59 (PKC)

Dear Judge Castel:

The Government writes with respect to the defendant's March 13, 2020, motion to dismiss the Indictment (Dkt. No. 73) and reply in support of that motion (Dkt. Nos. 82, 83, 84), the Government's March 17, 2020 motion to clawback certain discovery material (Dkt. No. 75), the conference held by this Court on April 15, 2020, and the declarations submitted by Assistant United States Attorneys ("AUSA") Andrew Adams, Tara La Morte, Samuel Raymond, and FBI Special Agents Wayne Boddy and Jonathan Polonitza.[1]

The factual declarations show that the Government's failure to produce data from three electronic devices belonging to "Individual-1," until February 2020 was wholly unintentional. The Government's inadvertent failure to produce these materials provides no basis to dismiss the Indictment, because that means the Government has not "controlled" or "vetoed" or "interfered" with the defendant's choice of counsel, *United States v. Stein*, 541 F.3d, 130, 154 (2d Cir. 2008); and the Government did not act in bad faith meriting dismissal on Speedy Trial Act grounds. *United States v. Esquilin*, 205 F.3d 1325 (2d Cir. 2000); *United States v. Reichberg*, No. 1:16-CR-468-GHW, 2018 WL 6599465 (S.D.N.Y. Dec. 14, 2018).

The declarations also show that the Government was and is bound by the invocation of attorney-client privilege with respect to certain of the materials on the Devices by Individual-1's attorney, David Gourevitch, the Government honored that invocation, and that the Government's disclosure of privileged materials from the Devices was inadvertent and cannot serve to waive the privilege (to the extent that the Government even could waive Individual-1's privilege, which the Government understands will be the subject of additional briefing by Individual-1's counsel). *See, e.g., United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) ("Inadvertent disclosure

---

[1] Agent Boddy has filed two declarations: a declaration to the public docket, and a supplemental declaration to this Court with a request that it be filed under seal.

has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents.”).

The Court should thus deny Jain’s motion to dismiss the Indictment, hold that the Government was and still is bound by Individual-1’s invocation of privilege when he turned over the Devices, and that the Government did not waive Individual-1’s privilege by its February 28, 2020 disclosure.

## I. Background

The investigation into Individual-1, Niket Jain, and the “Investment Company”, began in around May 2017. (Boddy Decl. ¶ 2). From August 2017 to February 2018, the investigative team consisted of AUSA Adams and Agent Boddy. (Boddy Decl. ¶¶ 2–3; Adams Decl. ¶ 1). Starting in February 2018, AUSA La Morte joined the investigative team. (Boddy Decl. ¶ 3; Adams Decl. ¶ 2; La Morte Decl. ¶ 3).

The investigation led to the charging of Individual-1 by complaint on September 11, 2018; he was arrested on September 12, 2018. (Boddy Decl. ¶ 4; Adams Decl. ¶ 2; La Morte Decl. ¶ 4). Individual-1 agreed to proffer with the Government; the first proffers occurred on September 28 and October 3, 2018, and AUSAs Adams, La Morte and Agent Boddy were all present. (Boddy Decl. ¶ 5; Adams Decl. ¶ 3; La Morte Decl. ¶ 4). During these proffers, Individual-1 told the Government that he had communicated with Jain via text message and other means, and that he had also used certain email accounts in furtherance of his criminal activities. (Boddy Decl. ¶ 5).

After these initial proffers, Gourevitch began sending correspondence between and among Individual-1 and Jain regarding the Investment Company; and Individual-1 and others. (Adams Decl. ¶ 4). The investigative team understood from the proffers and Gourevitch’s emails that Individual-1 had electronic devices and emails that were relevant to the various lines of investigation. (Boddy Decl. ¶ 6). Boddy emailed Gourevitch, cc’ing Individual-1, AUSAs Adams and La Morte, on October 5, 2018, to arrange to physically seize the devices from Individual-1 on consent. (Boddy Decl. ¶ 6; La Morte Decl. ¶ 6).

On October 9, 2018, Gourevitch emailed Agent Boddy and AUSA Adams (who forwarded the email to AUSA La Morte), stating that Individual-1 would consent to the FBI’s seizure of the devices, but that the “FBI, for its part, has agreed to respect the privilege and protections, and to separate those documents that are or appear to be privileged.” (Boddy Decl. ¶ 6; Adams Decl. ¶ 4; La Morte Decl. ¶ 7; La Morte Decl. Ex. A). Gourevitch also described steps he had taken to segregate documents deemed privileged, including moving privileged documents to folders marked privileged. (La Morte Decl. Ex. A). Though Gourevitch’s email stated that the “FBI” agreed to this restriction, the Government team all understood that it also applied to the United States Attorney’s Office. (Boddy Decl. ¶ 6; Adams Decl. ¶ 4; La Morte Decl. ¶ 7). Further, while Gourevitch’s email suggested that at the time of his email, the FBI had *already* agreed to this restriction (the “FBI . . . *has agreed* . . . ”), the restriction was only formalized when Agent Boddy relayed agreement to Gourevitch after receiving the email. (Boddy Decl. ¶ 6).

On October 10, 2018, Agent Boddy and another agent went to Individual-1's residence and retrieved three electronic devices from him: a cellular phone and two computers (the "Devices"). (Boddy Decl. ¶ 6). While there, Individual-1 filled out consent to search forms for the Devices, as well as email accounts and a computer server belonging to the Investment Company. (Boddy Decl. ¶ 7).

Agent Boddy brought the Devices to FBI CART (Computer Analysis Response Team). (Boddy Decl. ¶ 8). CART imaged all of the Devices in the next week or so, and Agent Boddy returned all the Devices to Individual-1 by October 16, 2018. (Boddy Decl. ¶ 8). CART uploaded the data from the images to an FBI review platform called CAIR; Agent Boddy wrote a report regarding the seizure of the Devices, which he uploaded to the case file. (Boddy Decl. ¶ 8). Agent Boddy also used the log-in credentials which Individual-1 had supplied on the consent to search form to access and download the entire content of Individual-1's email accounts to Agent Boddy's FBI computer. (Boddy Decl. ¶ 9).

Agent Boddy understood from Individual-1's proffers that Individual-1 mostly used email to communicate with Jain, and to a lesser extent text message or other communications. (Boddy Decl. ¶ 10). Agent Boddy engaged in a limited review of certain messages on the cellular phone. (Boddy Decl. ¶ 10). Agent Boddy never reviewed materials from the computers. (Boddy Decl. ¶ 11). AUSA Adams has never reviewed any of the materials from the Devices, and AUSA La Morte did not review any of the materials from the Devices at the time. (Adams Decl. ¶ 5; La Morte Decl. ¶¶ 7–8).

In January 2019, a grand jury returned the Indictment of Jain, who was arrested by Agent Boddy on January 29, 2019. (Boddy Decl. ¶ 12; La Morte Decl. ¶ 10). Agent Boddy and AUSA La Morte had several conversations about discovery. (La Morte Decl. ¶ 11; Boddy Decl. ¶ 12). Agent Boddy and AUSA La Morte discussed Agent Boddy's provision of discoverable materials in the FBI's possession, but never spoke about the Devices. (La Morte Decl. ¶ 11; Boddy Decl. ¶¶ 12–13 ). AUSA La Morte had forgotten that the FBI had possession of the Devices. (La Morte Decl. ¶ 9). AUSA Adams did not participate in preparing discovery materials. (Adams Decl. ¶ 6). Agent Boddy did not intentionally fail to alert AUSA La Morte about the Devices. (Boddy Decl. ¶ 13).

A few months after Jain was arrested, Agent Boddy transferred from the squad investigating Jain to a different squad. (Boddy Decl. ¶¶ 1, 2, 14). Agent Jonathan Polonitza became the case agent in May 2019. (Boddy Decl. ¶¶ 14–15; Polonitza Decl. ¶ 2; La Morte Decl. ¶ 3). When Agent Polonitza joined the case, he learned about the investigation by speaking with Agent Boddy, the prosecutors, and reviewing documents in the case file. (Boddy Decl. ¶ 15; Polonitza Decl. ¶ 3). Agent Polonitza was told that discovery to Jain was complete, with the exception of certain emails. (Polonitza Decl. ¶ 3). Agent Polonitza therefore believed that Agent Boddy and the prosecutors had already reviewed the documents in the case file to determine whether they were subject to disclosure, and if so, that they had been produced. (Polonitza Decl. ¶ 3). Agent Polonitza also observed that the case file was voluminous; he did not and still has not reviewed every document, and instead has relied on Agent Boddy and the prosecutors to learn the relevant facts and appropriate documents to review. (Polonitza Decl. ¶ 3).

Agent Polonitza's first task once assigned was to review the voluminous emails which had been obtained from Individual-1 on consent in October 2018 for production. (Polonitza Decl. ¶¶ 4–5). Because the emails had been downloaded to Agent Boddy's computer, Agent Polonitza had no need to consult the case file or access Individual's email account directly in order to review the emails. (Polonitza Decl. ¶ 5). Agent Polonitza arranged to have the emails uploaded to an FBI review platform called BIDMAS; when he provided the case number, he was informed that no documents had previously been uploaded under that case number. (Polonitza Decl. ¶ 5). Agent Boddy continued to speak with AUSA La Morte and Agent Polonitza when issues that arose, but Agent Boddy never discussed the Devices with Polonitza in 2019. (Boddy Decl. ¶¶ 15–16; Polonitza Decl. ¶ 8 (conversations in 2020 "were the first time I had discussed these Devices with either AUSA La Morte or Agent Boddy"). When Agent Polonitza had substantially completed the review of Individual-1's emails, he began to focus on trial preparation. (Polonitza Decl. ¶ 7). In August and October 2019, AUSA La Morte erroneously informed the Court that the Government had completed discovery, because she had forgotten the FBI had possession of the Devices. (La Morte Decl. ¶¶ 9–10). The Court scheduled trial for March 30, 2020.

In about November 2019, AUSA Raymond was assigned to the case. (Adams Decl. ¶ 6; Raymond Decl. ¶ 2). On or about January 28, 2020, AUSA La Morte and another FBI agent interviewed Individual-1 (La Morte Decl. ¶ 14). AUSA Raymond did not attend because he was on trial (Raymond Decl. ¶ 3) and Agent Polonitza was unavailable (Polonitza Decl. ¶ 8). During that meeting, Individual-1 mentioned a recording that included Jain, and that this recording was on a cellular phone that Agent Boddy had seized. (La Morte Decl. ¶ 14). AUSA La Morte confirmed that the Government had not produced such a recording in discovery. (La Morte Decl. ¶ 15). She immediately asked Agent Polonitza to determine if the FBI had in fact seized electronic devices belonging to Individual-1. (La Morte Decl. ¶ 15). Agent Polonitza asked Agent Boddy, who confirmed that the FBI had done so; Agent Boddy also directed Agent Polonitza to the relevant reports in the case file memorializing the seizure. (Polonitza Decl. ¶ 8; Boddy Decl. ¶ 17). Agent Polonitza had no recollection of ever seeing these reports before. (Polonitza Decl. ¶ 8). AUSA La Morte reviewed her emails and found the October 9, 2018, correspondence with Gourevitch; she forwarded this email to AUSA Raymond and Agent Polonitza, and stated that the Government needed to retrieve the Devices and produce the materials from the Devices as soon as possible. (La Morte Decl. ¶ 16; Raymond Decl. ¶¶ 4–5). AUSA La Morte also informed her supervisors, including AUSA Adams, regarding the Devices; AUSA Adams agreed that the Government needed to produce the materials on the Devices as soon as possible. (Adams Decl. ¶ 7; La Morte Decl. ¶ 16). AUSA La Morte, AUSA Raymond, and Agent Polonitza discussed and agreed that, per Gourevitch's email, there were documents marked privileged that neither the United States Attorney's Office nor the FBI should review. (Polonitza Decl. ¶ 9; Raymond Decl. ¶ 4).

AUSA La Morte and AUSA Raymond informed defense counsel and the Court about the Devices on or about February 12 and February 13, 2020. (La Morte Decl. ¶ 19; Raymond Decl. ¶ 6–7). Agent Polonitza retrieved three hard drives with images of the three Devices from the FBI's Evidence Unit, provided the drives to CART, which began to upload the images to a 6 terabyte drive provided by the United States Attorney's Office on or about February 19, 2020. (Polonitza Decl. ¶ 9; Raymond Decl. ¶ 5; La Morte Decl. ¶¶ 18–19). On February 20, 2020, the Court ordered a hearing for February 26, 2020. AUSA La Morte was traveling the week of February 24, so

AUSA Raymond was responsible for representing the Government during the February 26 conference and managing the production of the data to the defense. (La Morte Decl. ¶ 20; Raymond Decl. ¶ 10).

On February 25, 2020, Agent Polonitza provided AUSA Raymond with the 6 terabyte drive loaded with the images of the Devices. (Polonitza Decl. ¶ 9; Raymond Decl. ¶ 11). That day, AUSA Raymond reviewed the materials with the assistance of the U.S. Attorney's Office Information Technology unit. (Raymond Decl. ¶ 11). AUSA Raymond observed a folder one of the images of the computers called "Privileged." (Raymond Decl. ¶ 12). AUSA Raymond spoke with IT about how to remove this folder and produce the other materials from the two computers, so that the Government could provide a discovery drive to defense counsel at the conference the next day. (Raymond Decl. ¶ 12). AUSA Raymond arranged to obtain another 6 terabyte drive to produce the materials. (Raymond Decl. ¶ 13). AUSA Raymond represented the Government at the February 26, 2020 conference. Thereafter, IT informed AUSA Raymond that there were technical problems with removing the folder marked "Privileged," but ultimately told AUSA Raymond that the task was complete on February 27, 2020. (Raymond Decl. ¶¶ 13–14). Though IT offered for AUSA Raymond to confirm that the folder marked "Privileged" had been removed, he does not remember checking that. (Raymond Decl. ¶ 14). Defense counsel picked up the drive with the two computers uploaded on February 28, 2020. (Raymond Decl. ¶ 14).

Besides AUSA Raymond's cursory review on February 25, 2020, no one from the Government has reviewed the information on the computers; and no one has reviewed any files within the folder marked "Privileged." (Raymond Decl. ¶ 12; Polonitza Decl. ¶ 10; La Morte Decl. ¶ 7; Adams Decl. ¶ 5; Boddy Decl. ¶ 11). Agent Boddy and Agent Polonitza have reviewed certain materials on the cellular phone: Agent Boddy reviewed the materials in or about November 2018; Agent Polonitza reviewed the materials in March 2020, and focused only on certain communications between Individual-1 and Jain. (Boddy Decl. ¶¶ 10–11; Polonitza Decl. ¶ 10).

## II. The Government's Failure to Review the Devices Was Inadvertent

As the Government has repeatedly acknowledged, the investigative team should have promptly reviewed the Devices, determined which materials were subject to disclosure, and produced them in the course of discovery in this case. But its failure to do so here was inadvertent. The failure arose from Agent Boddy's beliefs that the prosecutors knew about the Devices among other things, (Boddy Decl. ¶ 13), AUSA La Morte's failure to recall the existence of the Devices during the discovery process (La Morte Decl. ¶¶ 9–10), and Agent Polonitza's belief that materials he observed in the voluminous case file had already been properly produced or otherwise reviewed, and that discovery was complete except for the substantial email review he was first tasked with performing. (Polonitza Decl. ¶¶ 3–5).

And when the Government realized its error, it did not hide it. Within a week of realizing the error, the Government notified defense counsel. The next day, the Government informed the Court. In April 2020, when defense counsel requested FBI reports regarding the receipt and handling of the Devices, the Government produced the relevant reports.[2]

[2] The Government provided an additional report today.

The course of the Government's conduct proves precisely what the Government argued in its opposition to Jain's motion to dismiss the indictment: that any theory that the Government intentionally delayed, but then immediately turned around, alerted the Court, and then produced the discovery as swiftly as possible, are illogical, self-contradictory, and entirely speculative. The course of conduct that the United States Attorney's Office and the FBI took after January 2020 when it realized the error prove the exact opposite of Jain's theory: "the Government recognized its own error and acted swiftly to fix it." Gov't Opp. to Motion to Dismiss, Dkt. No. 79, p. 8.[3]

In addition, a number of factual assertions in the defendant's April 3 reply declaration are simply factually inaccurate. For example:

- Contrary to the statements in paragraphs 8 and 26 of the reply declaration, the Government did not choose to disclose the Devices in connection with the compilation of 3500 material. As described above, AUSA Raymond and Agent Polonitza had nothing to do with the Government's realization about the failure to review the Devices, which occurred soon after the meeting on January 28, 2020 with Individual-1: Agent Polonitza was not present at that meeting and AUSA Raymond was on trial;

- Contrary to the statement in paragraph 18 of the reply declaration, AUSA La Morte was not the lead prosecutor in this case since its inception;

- Contrary to the statements in paragraph 23.a. of the reply declaration, as explained by Agents Boddy and Polonitza, the Government did not obtain a search warrant for Individual-1's email, and instead used the log-in credentials Individual-1 provided on a consent to search form, rather than from the Devices themselves, which as described therein were not accessed to retrieve the emails. (Boddy Decl. ¶¶ 9, 11; Polonitza Decl. ¶ 5).

Based on the sworn declarations in this case, the Court should draw one conclusion: the Government's failure to review and produce materials from the Devices was inadvertent, and provides no basis to dismiss the Indictment, on right to counsel or Speedy Trial grounds.

## III. The United States Attorney's Office Is Bound by the Attorney-Client Privilege Invocation and Its Inadvertent Disclosure Did not Waive any Applicable Privilege

The Government understands that Individual-1's counsel will be filing additional declarations and briefing in light of Your Honor's April 15 conference. Whether Individual-1's consent for the FBI to seize and search the Devices pursuant to agreed-upon terms and conditions constitutes a waiver of privilege relies in part on information outside of the Government's control. But the facts listed above make clear three points: first, the relevant Government officials have always believed that the United States Attorney's Office is and was bound by Gourevitch's

[3] And as of today, the Government has produced to Jain the reports from Individual-1's proffers and reports documenting the receipt of the Devices.

invocation of privilege; second, the Government has honored this invocation of privilege; and third, the United States Attorney's Office has not waived any applicable privilege by its inadvertent disclosure with respect to the Devices.

Gourevitch wrote in his email that the "FBI, for its part, has agreed to respect the privilege and protections, and to separate those documents that are or appear to be privileged." There is some confusion in this email: the FBI had not yet agreed to respect the privilege as of the sending of that email, and it is not clear on its face that the FBI's agreement also bound the United States Attorney's Office. But Agent Boddy called Gourevitch soon after receiving the email to confirm that the FBI would be bound by its terms; and all of the relevant stakeholders understood that the invocation bound the prosecutors no less than the FBI.

The Government has scrupulously honored this privilege since its invocation. None of the members of the investigative team have reviewed materials marked privileged, or reviewed materials that were in fact privileged.

Finally, AUSA Raymond's declaration shows that the production of privileged materials was inadvertent: IT had informed him that the privileged materials were removed from the drive for defense counsel; and when the Government learned from defense counsel that the materials were in fact still on the drive, the Government asserted privilege "immediately upon discovery of the disclosure," and made a "prompt request" "for the return of the privileged documents." *United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003).

Respectfully,

GEOFFREY S. BERMAN
United States Attorney

by: /s Samuel L. Raymond
Samuel L. Raymond / Tara M. La Morte
Assistant United States Attorneys
(212) 637-6519 / 1041