EMMET, MARVIN & MARTIN, LLP
COUNSELLORS AT LAW

EMMET 200 YEARS 1805–2005

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

Paul T. Weinstein
*Partner*
Tel: 212-238-3090 • 212-653-1774
Fax: 212-238-3100 • 212-653-1760
pweinstein@emmetmarvin.com

September 14, 2020

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Niket Jain,
Criminal Docket No. 19 Cr. 0059 (PKC)

Dear Judge Castel:

We represent the Defendant Niket Jain (the "Defendant") in the above-referenced case. We respectfully request that the Court accept this letter in reply to the Government's Post-Hearing Memorandum of Law dated September 9, 2020, and in further support of the Defendant's motion to dismiss the Indictment.

The Defendant's August 26, 2020 Post-Hearing Memorandum (Dock. No. 127), analyzed the testimony of Agent Boddy and AUSA La Morte in detail. This analysis proved that the prosecution team deliberately withheld the Krigsfeld Devices for over one year and had intended to permanently suppress them, as well as to permanently suppress the Semen Kaplan Declaration. Furthermore, while not necessary to grant the Defendant's motion, the evidence at the hearing again showed that the purpose of the suppression was to withhold *Brady* material, which was the information on the Krigsfeld Devices and the Semen Kaplan Declaration showing that: a) without the Defendant's knowledge, Aberon, the "Investment Company" referred to in the Indictment, together with Krigsfeld and the alleged victim, "Investor-1," were engaged in a money laundering conspiracy, and were using the Defendant unwittingly as a front in this scheme; and b) the alleged incorrect Aberon documentation of investments was done not as a scheme to defraud "Investor-1," the money launderer who with Krigsfeld in substance had formed Aberon and supplied 99% of the funds invested in it, but was done by Krigsfeld with and for the money laundering conspirators including himself, to hide and facilitate their ongoing scheme.

In its September 9, 2020 Post-Hearing Memorandum, the Government provides no refutation of the defense's piece by piece analysis of the testimony and evidence establishing that the withholding of evidence was deliberate. Instead, the Government asserts without analysis of the evidence that its conduct was "inadvertent," when all the evidence shows to the contrary. Accordingly, it is respectfully submitted that the testimony and evidence here reasonably supports only one conclusion: that the withholding by the

Government of core discovery was deliberate, and further, that it was done to prevent disclosure of evidence that the Government believed undermined the theory of its prosecution, which constitutes the intentional withholding of *Brady* material.

With the defense's previous factual analysis unrefuted in substance, the relevant testimony and evidence will not be further reviewed here. We limit the reply below to a response to misstatements or mischaracterizations of the record by the Government in its September 9, 2020 Memorandum:

**First**, to try to show that the Government's conduct did not prejudice the Defendant, the Government contends that it produced the Krigsfeld Devices in time for them to be used for the previously scheduled March 30, 2020 trial. Gov. Mem. at 7-8. This clearly is not accurate. The Devices contained five gigabytes of data. They still have not been fully analyzed by the defense given their size, the condition of the data and method of the Government's production. Further, following the Government's production of the Devices in February 2020, which was over one year after this case was commenced, the Government then filed a motion to claw back certain data within the Devices that it deems to be "privileged" material belonging to Krigsfeld. Due to the Government's slow pace of reviewing these documents, its motion *still* remains pending six months later, so that the Defendant has yet to access these documents even at this late date. The Government's claim, therefore, that all of the data contained in these Devices could have been reviewed by the defense by March 30, 2020, so that the Defendant was not prejudiced, is entirely baseless. Accordingly, the Government's argument that there was no prejudicial effect on the Defendant by deliberately withholding exculpatory evidence for over one year, when the Government was in possession of that evidence at the outset of the prosecution, is not true and instead establishes the manifest prejudice to the Defendant.

**Second**, in its September 9, 2020 Memorandum, the Government failed to credibly explain its conduct in suppressing the Semen Kaplan Declaration, and in fact deliberately avoided doing so. The Semen Kaplan Declaration was critical *Brady* material for two, separate, reasons. <u>First</u>, in the sworn Declaration, which Krigsfeld provided to the Securities and Exchange Commission, and which the suppressed Krigsfeld Devices showed Krigsfeld himself assisted in drafting, Semen Kaplan indicated that he was "Investor-1" in the Indictment, rejected any characterization of himself as a "victim" of fraud, and "release[d]" Aberon and Krigsfeld of any liability for "fraud, deception, misrepresentation or misappropriation." (Dock. No. 114-1, Semen Kaplan Declaration at ¶ 5). Thus, the evidence the Government intended to suppress includes a document in which the alleged victim in this case declared under oath that he is not a victim. <u>Second</u>, and separately, it is exculpatory for this reason: Semen Kaplan's description of the funds as belonging to him is not true and is further evidence of the money launderers' participation in a scheme to create inaccurate reporting to hide their conspiracy, refuting the allegations in the Indictment against the Defendant Niket Jain. In reality, the funds invested in Aberon were from Leon Lann/Kaplan, not Semen Kaplan. (Aug. 12, 2020 Hearing Exh. 6 at pp. 4-5). Semen Kaplan was a front used in the money laundering scheme to hide the source and origin of the funds. The Semen Kaplan Declaration was

submitted to the SEC by the money laundering co-conspirators to hide the money laundering scheme, which is the same reason that the money launderers sought and used the allegedly inaccurate financial reporting of Aberon. Thus, for two separate reasons the Semen Kaplan Declaration that the Government attempted to suppress is without doubt *Brady* material.

The deliberate obfuscation by the Government - here the F.B.I. and Department of Justice, together - of the basic facts of their handling of the Semen Kaplan Declaration, continuing through the Government's September 9, 2020 Memorandum, is sufficiently improper conduct alone to merit the dismissal of the Indictment. The Government has intentionally hidden the facts of its handling of the Semen Kaplan Declaration, and asks this Court to infer, based on that Government's own obfuscation, that its conduct was not "deliberate." The Government's conduct in hiding the facts of its handling of the Semen Kaplan Declaration, through lack of investigation, deliberately vague testimony, and purported memory loss, is improper and contemptuous of the rights of the Defendant and the processes of this Court. For this conduct alone, which has deprived the Court of the precise facts regarding the Government's knowledge and handling of the Semen Kaplan Declaration by the prosecutorial team, including the FBI, it is respectfully submitted that the Indictment should be dismissed.

**Third**, the Government, as a backup argument to justify its year-long attempted permanent suppression of the Krigsfeld Devices and Semen Kaplan Declaration, contends that Joseph Krigsfeld's operation of Aberon as part of a money laundering enterprise with the purported "Investor-1," in which these co-conspirators used the Defendant Niket Jain as an unknowing front, was not *Brady* material. Gov. Mem. at 9. The Government ignores that this evidence is exculpatory because it shows that there was no scheme to defraud "Investor-1" of money or property. Krigsfeld and his money laundering co-conspirators sought alleged incorrect reporting of the performance of Aberon, which was 99% composed of funds from Leon Kaplan/Lann, for the same purpose that they created the Semen Kaplan Declaration and provided it to the SEC: to hide and prevent investigation of the money laundering scheme from regulatory authorities, in this case, it appears, in Europe, and primarily Luxembourg. The Government's attempt to ignore the nature of the evidence it deliberately suppressed provides no defense to its conduct here.

The Government also facilely responds that this evidence is not exculpatory because it is still a crime to "defraud a fraudster," (Gov. Mem. at 8-9), pretending that this is what is being argued here. The Government's contention mischaracterizes the Defendant's point. This evidence is not simply that the purported victim is guilty of some unrelated crime. It is that the alleged victim in fact was not actually a victim or an intended victim, that the purported victim admitted this fact under oath, that there was no scheme aimed to defraud this purported victim, and that there was no agreement with Krigsfeld or anyone to defraud this alleged victim. Thus, here, the withheld evidence shows that the alleged co-conspirator Krigsfeld was working *with* the purported "victim" - here "Investor 1" - to create inaccurate reporting in order to facilitate a money laundering enterprise of which the Defendant Jain was not aware.

The cases cited by the Government to argue that this evidence is not exculpatory bear no resemblance to this case, and not only show the Government's argument to be meritless, but support the Defendant's position. In *Pantoja v. United States*, No. 13 CIV. 2781 BMC, 2013 WL 3990912 (E.D.N.Y. Aug. 2, 2013) the defendant pled guilty, and in a petition filed pursuant to 28 U.S.C. § 2255 argued that evidence that ABN Amro, which the defendant claimed was a victim, had engaged in a mortgage fraud *unrelated* to the mortgage fraud to which the defendant pled guilty, should have been disclosed as *Brady* material. The court unremarkably rejected the argument that "the petitioner's fraud gets washed away, even though his fraud and the banks' alleged fraud were independent of each other." *Id.* Here, the facts are the opposite: the withheld evidence of money laundering is directly related to the allegations in the Indictment because the allegedly incorrect financial reporting for which the Defendant was charged was in fact created by and for the money laundering co-conspirators, Krigsfeld, Lann/Kaplan and others, to hide and facilitate the money laundering scheme, and therefore the "scheme to defraud" alleged in the Indictment did not exist. Thus, *Pantoja* supports the proposition that evidence relating to the crimes alleged in the Indictment, showing that an alleged victim was in fact not a victim or defrauded, but rather was directly involved in the alleged criminal activity, is *Brady* material.

*United States v. Korogodsky*, 4 F. Supp. 2d 262 (S.D.N.Y. 1998) is the same. In that case the defendant was charged with defrauding a person in Russia by contracting to sell goods with no intention of supplying them. In a pre-trial motion, the defendant sought a deposition in Russia of the purported victim, to show that the victim was involved in some unspecified improper activity unrelated to the defendant's alleged attempt to defraud him. The court held that this was not material. *Id.* Once more, that is not this case. Here, the withheld evidence is exculpatory, because it bears fundamentally on the allegations in this Indictment, showing that that the purported "Investor-1" was not a victim, there was no scheme to defraud him, and the alleged inaccurate reporting was for the knowing benefit of "Investor-1" to facilitate and hide the money laundering scheme.[1]

**Fourth**, the Government claims that none of the exculpatory evidence it withheld is relevant to Count 4, which alleges a misrepresentation by the Defendant to the SEC during a deposition on January 26, 2018. Gov. Mem. at 10. To the contrary, this Count

[1] Similarly baseless is the Government's opinion that Russian organized crime member Leon Lann/Kaplan must be a victim because after losses at Aberon he continued to operate the money laundering scheme by transferring further funds to Aberon. (Gov. Mem. 9). While the Government's contention is not even consistent with the facts of this case, its offhand speculation on what a Russian organized crime money laundering enterprise will do when it incurs an investment loss in one part of an international money laundering operation is without any basis. Moreover, the Government is in no position to assert this argument as it never even attempted to contact Lann/Kaplan to ask him about any of the money transfers to Aberon. The incredible reason given for this by Agent Boddy was that the prosecution team would not bother because Lann/Kaplan was not in the United States, so the F.B.I. and the Department of Justice had no means to call or contact him. Thus, it is respectfully submitted that the Government's self-serving rank speculation on the motivation and plans of Leon Lann/Kaplan in operating his money laundering enterprise should not be considered by this Court.

also should be dismissed. During the SEC deposition, the Defendant, who had ceased working at Aberon years earlier, was asked about events and persons about which he had no knowledge, like Semen Kaplan, which now appear, based on the recent disclosures of previously suppressed evidence by the Government, to have been part of the money laundering scheme operated by Krigsfeld, Leon Lann/Kaplan, Semen Kaplan, Victoria Kraine, and likely others, using the Defendant as an unwitting front. Count Four appears to be an allegation that the Defendant testified falsely when asked at the January 26, 2018 deposition about a document created, it appears, in May 2012, *over five years* before, and testifying to a lack of knowledge or memory. That the money laundering co-conspirators used the Defendant as an unwitting front in their money laundering scheme explains and provides critical context to the Defendant's SEC testimony. Therefore, Count Four is not separate from the other counts in the Defendant's motion to dismiss. Furthermore, the Government also ignores that this Count should be dismissed on two additional grounds, which are that the Government's conduct deprived the Defendant of his counsel of choice, and is responsible for the violation of the Speedy Trial Act.

**Finally**, the Government claims with no authority that inspection of the Grand Jury minutes is not appropriate because it was not required to disclose to the Grand Jury the identity of the person whose "money and property" was the aim of the scheme to defraud. (Gov. Mem. 10-11). The Government claims it can change the identity of this person during the trial if it wants to. Again, the Government's position is meritless. The Defendant has the right to know the identity of "Investor-1" as presented to the Grand Jury so that he can adequately defend himself. At the August 12, 2020 hearing alone, three different versions of the identity of "Investor-1" are on the record. If the Government is not required to disclose the actual identity of Investor-1 it represented to the Grand Jury as the alleged "victim," the Defendant will be subject to surprise at trial and risks conviction for a crime not presented to the Grand Jury. Therefore, it is respectfully requested that, if the Indictment is not dismissed, the Court inspect the Grand Jury minutes to determine the identity of "Investor-1" whose assets are the alleged aim of the purported scheme to take his or her money or property, so that the Defendant can adequately defend himself at trial.

Respectfully submitted,

/s/ Paul Weinstein

Paul Weinstein

cc: Government Counsel (by ECF)